May it please the Court. Good morning, Your Honors. Floyd Weisner for Plaintiffs Appellants. Your Honors, as you know, this case actually is a consolidated appeal from the dismissal of two different defendants, Singapore Airlines and EVA. If Your Honors would not mind, I'd like to take the second one first, the EVA appeal. If, even if the Warsaw Convention applies to Singapore Air, it should not be applicable to EVA. And that is because of this Court's decision in DAZO. I don't think there should be any question that DAZO is controlling law here. So your position is that it doesn't apply at all, not that it just, not that just Article 28 doesn't apply. My position is, is twofold. Number one, the Court erred in failing to hold Singapore Air to its burden of proving that Indonesia and Malaysia are Singapore Airlines. Now, I understand that. I'm talking about the EVA issue. Okay. My position on EVA is that even if Warsaw applies to Singapore Air, it does not apply to EVA because EVA is not the exclusive AVA. The question was the treaty as a whole doesn't apply. Exactly. But this is provision. Exactly. Exactly. I'm sorry. I misunderstood your question, but that's exactly my point. The district court below talked, it mentioned DAZO, but then it talked at length about the Court's decision arising from the Swiss Air crash in Peggy's Cove. And that's just not the law in this district. The law in this circuit is DAZO. And DAZO says, and I think the whole issue in this appeal comes down to who is right about their interpretation of DAZO, plaintiffs or defendants. I read DAZO to say that DAZO was careful to distinguish cases where the court found Warsaw to apply to agents of carriers. And the DAZO court said that none of those cases involved a dual or common agent of multiple airlines, including a domestic carrier, and none of those cases involved that agent providing basic services not required by the Warsaw Convention, but required of all flights, whether Warsaw or non-Warsaw, and providing services to Warsaw or non-Warsaw passengers or even non-passengers. Now, that's what I read DAZO to say. Now, if you apply that understanding of DAZO to the facts here, we win, because EVA doesn't even prove that it's an agent of Singapore Air. Start from that first point. Its only evidence that's been in the record was a conclusory affidavit from one of its employees who said, we entered into a ground service handling agreement with Singapore as the agent of Singapore. Well, that's just a conclusion. That's for this Court to decide. Well, what were they actually doing? They were providing dispatch and ground services, Your Honor. They were deciding essentially, they were telling them, giving them information about whether they could take off and … Basically. Weather information. Usually something an airline does for itself. Yes, yes. But an airline does it for every flight, domestic or international. It doesn't matter. You're still going to get weather information. You're going to get flight plan. You're going to get the notice to Airman, the NOTAMs. That's what they're doing. And that's what they do under contracts. They don't just have one contract with Singapore Air. For each particular one, they're only doing it for an international. In this instance, what they produced was only with regard to the international flight and only for this airline. But, true. But they were providing the same identical information that same night to several different carriers, including a domestic carrier. So? Well, so I think Dazzle says, Your Honor, that you have to be the exclusive agent. They use those words, or at least they use the words in distinguishing from dual or common agents. That's the words they use. And I … Why does it say you have to be? Well, it doesn't, Your Honor. I'm reading from the converse of that. I'm sorry? I'm reading, like, from the converse of that. It says that … Well, I understand. I understand you're reading the converse. And the converse says this is not the case. Why don't you go get Dazzle. Sure. Let's look at this. I can't read it here, Your Honor. Let's see. It's on page … Let's see. It's on page 939, 295F3, 939. It's under heading note three, Your Honor. Uh-huh. And it says, None of those cases, referring to cases where Warsaw Convention carrier status was extended to agent of airlines. And it says, None of those cases involves extending carrier status to a company that was a dual agent, the agent of more than one airline, including an airline with non-Warsaw Convention status. Further on, Your Honor, in that same paragraph, it says, No case supports the proposition that a security company that is acting as a common agent of multiple airlines, domestic and international, and providing basic airport security services mandated by federal law, regardless of whether the flight involved is domestic or international, should be accorded carrier status. Well, if you substitute dispatch for security, you've got my case. We're dealing with the actual flight itself. That's true, Your Honor. We're dealing with an agent who at any particular time is exclusive. In other words, in any particular role. He's not doing — in this instance, the point was, as I understand it, that the agent just was completely indifferent as to what airplane the person was going on, whether they were going on an airplane. This was before 2001, and people could just go through the gate, through the security, even if they weren't going on an airplane. You're right. And my case is not as strong as Dahl's in that respect. You're right. But I think your example would be stronger if EVA was giving a different set of package information to Singapore Air, giving a different one to the domestic carriers, giving the same thing. Well, they weren't. I mean, they were giving the same meteorology, but they weren't giving the same other stuff, as I understand it. What if there were a maintenance company, an engine maintenance company, and what they do is the plane lands so many hours on the clock, and every so many hours you've got to change the spark plugs or whatever they do on big jets, or else it can't fly. You have to do a certain amount of maintenance. So while it's down on the ground in Singapore, it's got a layover. They say, well, you know, it's now due for this service or replace the fins or replace, you know, whatever. And let's say this is a company that does that for whatever plane lands there, domestic or international, that needs a particular service. I would say, Your Honor, that it's not. I'm sorry. That that particular company is not afforded Warsaw Convention carrier status under DASA. It's not an exclusive agent. It's providing services to both non-Warsaw and Warsaw flights, and it's not an agent. It's very hard to understand why this ought to matter. The airplane itself is providing service on both domestic and international flights, the carrier, right? Well, that's a good point, Your Honor, and that's one I wanted to make, too, to get back to one of your earlier questions. Even if we just limit our inquiry to just this flight, SQ-006, there's people on that flight who are non-Warsaw passengers. So they're providing, they're even providing services to both Warsaw and non-Warsaw. So it's the airlines, and now the carrier is not covered either. No, the carrier is, but for the carrier is covered for its, because it's a, if defendants are right, and Malaysian and Indonesia are signatories in our particular case, it's covered as a carrier. We're talking about sending. I understand that. I'm trying to find out why you would have this distinction if a carrier can serve both Warsaw and non-Warsaw passengers and both domestic and international flights. Why should it matter with regard to their agent whether they're doing that, other than in this very strange, simultaneous situation that DASA was? Well, Your Honor. As long as it's sequential, how's it different if it's the airline or the carrier or the agent? Well, but the law, the way the whole Warsaw Convention was set up, Your Honor, was that these whole limited form provisions are very specific and they're very much favorable to the airlines. So your plaintiff can only sue in four different forms. So the law is set up so that that kind of special treatment is only afforded to the carrier. That's the intent of the treaty. It's not to give it to everybody else who can possibly fall under the rubric. Well, that's a different issue. That's what I tried to start with, which is exactly when and how are agents in general covered under Article 28, the venue provisions in particular. And that's why I asked the question I asked. Right. Suppose EVA were covered here. Where would you – what is your understanding of where you could sue them? Four different fora. Where? Which fora? Where EVA is or where Singapore Airlines is? EVA. I think EVA. Because now you're talking about a whole different entity. And EVA, even though it's the agent, EVA. So EVA is located one place and Singapore another. Yes. So it's not – even though the statute only talks about carriers, it only talks about four places, not six places. Right. But you see, Your Honor, it's a treaty. The Warsaw Convention treaty is very specific. And it's meant to apply just to certain – to carriers. And if we start expanding it to anybody, then we're getting beyond the intent of the treaty as a whole. And I don't think there's any public policy grounds for doing that. But I don't understand you to be arguing that it doesn't apply to agents. You're just saying it doesn't apply to this agent. Right. I'm saying – I'm reading Dazzo. But I'm saying – You would agree it applies to employees, right? Yes. And there's a reason it does. And that read very wisely, the Second Circuit went into that, and it said it's because plaintiffs' attorneys like me, otherwise, might, being unable to get around the damage limitations of the old Warsaw, would sue the employees. And that's not fair. So how would you go about applying the venue provisions, Article 28, to employees? Do you sue the employees where they – where their domicile or where the airport line is? Right. That's a very good question. But first of all, under read v. Weiser and Dazzo and all those cases, you can't do that. But none of them deal with this venue problem. They're all liability questions. Well, I guess I'm stuck, Your Honor, because we're talking about a hypothetical that can't happen because you can't sue them under Warsaw, under Dazzo or read or any of the decisions. You can sue them. You're just stuck with the same liability provisions. That's my understanding. Well, but if – yes, you're right. But if Eve is right, then you're stuck with the same venue provisions and everything. And I guess that gets back to your original question, Your Honor. There is no – there is no limitation on liability under Warsaw anymore, at least as to Singapore. They now have agreed to waive their damages limitation. So – I have suits in the United States, I thought. Suits anywhere, Your Honor. The Warsaw Convention would apply anywhere. Oh, no, no. I thought you said they had agreed to waive. They do, anywhere. Their liability now is no longer $75,000. Under the IAD agreements that most of the world's carriers, including Singapore, have signed, their liability now is unlimited. So this whole issue of protecting employees and agents through the limited liability provisions is no longer even necessary. Now we're talking about now Eve wants to extend the limited venue provisions. And I have a problem with that. I don't think that's the intent of the treaty. And I don't think – I think this Court is going to – would have to, in order to rule against this, is going to have to retreat from DASO. Now, the four places where you could sue Singapore, we agree Singapore is covered, are where the company is incorporated. Yes. Principal place of business. Yeah. Ticketing and destination. Okay. Which means you could not sue in Taiwan, for instance. That's right. Unless somebody bought a ticket there. Now, can you sue Eva in Taiwan? Yes. So that we can assume that if – let's say Eva operated only in Taiwan, which I know is not true. But let's say you had a company that furnished this kind of information, a maintenance company, or that would add a fifth place of venue. I guess that's right, Your Honor. Fifth and sixth, probably. Place of business and placement company. Right. Maybe probably the same thing, but – right. But you still don't have the plaintiff's place of residence, plaintiff's domicile. And you look at both Singapore and Eva do business in the United States. And normally there would be no problem suing them in the United States. If the Court reverses here, we're going to sue them in the United States. That's where we brought suit against them. That's – normally you would have that. The Warsaw Convention restricts it. It takes that right away. Even though these companies are doing business in the United States, making a lot of money in the United States, we can't sue them in the United States because of the Warsaw Convention. Now, we're going to have to live with that for carriers. But to extend it beyond that to anybody who's a multiple agent of a carrier, that's not right. And I don't think that's what Dazzo found. But Dazzo doesn't say very much. I mean, it is – the way it is written, it talks about security companies. It has all of these qualifiers that are strung together and say we have no case that involves all of these qualifiers. And you want to sort of read the security company qualifier out of there and pretend it doesn't exist. But it's there. It's there. It's there. It's in the conjunctive. Now, I realize it's not a very well-written opinion. In fact, this is a pretty good model of how not to write an opinion. But the reality is that all sorts of things that air carriers do through contractors, through agents, that are absolutely necessary to let them conduct their business. Maintenance on the planes, fueling of the planes. Getting weather information. Getting spare parts. Communications with the ground. All sorts of things, some of which are done – they can't employ everybody along the way. And isn't it a fair line to draw those things which really are core to flying and those things which are collateral, like security? And isn't that a fair line to draw with DASA and say, look, what DASA was talking about is when you're just talking about security, that's really not a core function of flying. Whereas, you know, getting the plane on the right runway and making sure that it doesn't hit. How do you decide Judge Kaczynski's question? I mean, what about the air controllers? Well, I do have an answer to Judge Kaczynski's question, I think. Well, where do you draw the line? Are air controllers covered by – well, you don't think these people are, so obviously air controllers are. But what is it? What is the function? You know where I draw the line, Your Honor, in answer to Judge Kaczynski's question that I think you referred to as the core line? And that is it's not a question between flight and security. It's a question between international or domestic, Warsaw or non-Warsaw. We can all agree that the Warsaw Convention only applies to international transportation between signatory nations. It doesn't apply to all flight. So when Your Honor was saying, well, it's a security company and this is flight, okay. But it's not solely international flight. It's domestic, non-Warsaw flight. And when that happens, that's the line you draw. I mean, there's the airline. I'm really having a big trouble with this. The airlines, that's not exclusively international either. So what does that prove? But when it's engaged in international flights, Your Honor, then the provision – Right. And when they're engaged in international flights, it's the same thing. Sure. Sure. And when they're not, they're not. Same for either. That's right. I think you should try to answer Judge Reinhart's question. You've sort of deflected this question by coming up with a different question of your own. Why don't you try answering his question? Because I think that's – Okay. I apologize. What is sort of a basic ingredient of the flight that Judge Kuczynski was describing? That is, whether it's done by an employee or by an agent, how do you determine what's really part of the role of the airline? The flight. Do you draw that, for instance, the air controller? Because they have to depend on that for the flight. Does it include maintenance? Does it depend on the history of whether this is normally done by the airline itself or by independent companies that provide services? I mean, there are a lot of things that are essential to a plane ultimately getting in the air. Right. And getting there safely. Right. When is the agent covered by the – Let's assume the test were that if it was sort of an essential part of the flight and the airline's operation, whether it's done by an agent or not. Does maintenance fall within that? Does it depend on whether airlines traditionally do maintenance or whether they traditionally had people at an airport who were hired by the airport do it? What does it depend on? Where do you draw the line? I think all of your examples involve services and further of a contract of carriage, a contract of flight maintenance, air traffic control. I don't know what else Your Honor said, but all of those. So I don't draw the line there, Your Honor. So you'd say they're included if they – suppose it did nothing but international flights for one airline. They're covered. They're covered. They're covered. I don't have a problem, and perhaps I'm probably not being clear in my argument. No, you're clear. You're very clear. I mean, you just answered about half the problem. I don't have a problem with the type of work they're doing. The district court below found that this – that EVA was involved in services in connection with the contract of carriage. I agree with that. Okay. What I don't agree with is they're not the exclusive agent. Your only argument is that you have to be exclusive. If you do it for two companies instead of one or if you do it for international and domestic, then you're out. If you do it solely for international, for one company, then you're in. That's right. That's right. It's the exclusivity. Well, that makes it easy. So you have an employee who works half-time for American Airlines and – or half the time on domestic flights and half the time on international flights, they're out. No, Your Honor, because he's an employee. An employee is going to be covered as – But he's an employee of a company that does sometimes international, sometimes domestic. Well, that company that – it depends upon the flight, then. If that company's flight is a domestic flight, that company is not going to be covered by Warsaw, and neither will its employee. I'm having a very hard time understanding that. I'm having a hard time explaining it, I guess, Your Honor, and I apologize for that. I'm not doing a very good job, I guess. But – Well, even worse, you've only got a minute in the 25 seconds. And I haven't even talked about Singapore Air yet, and I'd love to be able to say something about that. Yeah, well, I think with that we understand in the briefs, unless you've got something really new to tell us why these countries are not covered by the convention. You made a lot of arguments in your briefs. Well, the only thing I would say about Singapore Air, Your Honor, is please, somebody look at the developments in international relations after those alleged notes from Indonesia in 1952 and from Malaysia in 1970. Neither the district court nor the defendant, Singapore, has ever responded to my contention that the 1952 note was reversed by our presidential decree of Indonesia of 1959, and the 1970 note from Malaysia was reversed by an act of carriage of 1974. But isn't there a general principle that the records of the registry are just conclusive of any domestic? Sure. And you know, Your Honor, I wouldn't be here if that was – I wouldn't be here just making a senseless argument about what you may think after the last one. But it's the – it's the inconsistencies in all the evidence here that really bother me in this Ming Tai case. But there's no inconsistency if those things are conclusive. Right. If they're conclusive, they're conclusive. That's what conclusive means. You – you – there is no other evidence you look at. But, Judge Kuczynski, if you look to the Ming Tai decision from this circuit, it says we find conclusive U.S. – the State Department's U.S. treaties in force. U.S. treaties in force for 1999 does not include Indonesia. For 2000, it does. Oh, is that a typo? I mean, it's – it seems to me that the U.S. State Department doesn't even know. So – But we're not talking about the U.S. State Department. We're talking – what's conclusive, as I understand it in this context, is the registry of what used to be the government of Poland and is now the IAOC. Right. Right. And they're listing. And that's not contradictory. And what's the problem? Because it doesn't say anything about what – that was – they're talking about a 1952 note, which was repealed in 1959. But they're – whatever they're talking about is conclusive. It doesn't matter what they're talking about. Well – What conclusive means. I understand that, Your Honor. But I would still say I've never seen a response to that argument by anyone. Well, but how do we litigate something like that? Look at – look at what's happened in Indonesia and whether there's an appeal and whether we have experts coming in. You have a list. You look and see what's on the list. That's another matter. Very simple. That's true. Except that that whole list to me is inconclusive. If you look at that list, it shows United Kingdom, for example, and it shows the countries that it adhered to – colonies it adhered to on its behalf. It doesn't include Malaysia. Netherlands doesn't even – doesn't include – But wait a minute. That – as I read the – and this is quite clear, I think, in the Convention. They don't have to affirmatively adhere for anybody. They have to opt out. In other words, whatever their territory and colonies are at the time they opt in, they're covered unless they opt out for them. Well, I wonder about that, Judge. That's a good point and one that occurred to me, too. But I see also Article 40 says that a country may accede on behalf of the colonies. Now, why would you have that in there if it's automatic? I understand you said that. Now, in all fairness, it does say, you know, perhaps Your Honor is right, that that means, well, if they denounce it in the first place, then they can subsequently accede, maybe, because it does use that word. I don't know. But – It says the opposite. It says any high contracting party may at the time of signature declare that the acceptance it gives to this Convention does not apply to any of its colonies. It doesn't say – All right. But keep going, Your Honor. It may subsequently adhere separately in the name of any of all of its colonies, which have thus excluded originally. Right. Subsequent to its adoption, subsequent to its – It says it's very clear. If they've excluded them originally, they can come back in. They can bring them back in. That's what it says. It doesn't say any – the language that you just quoted does not appear in the – Well, I was referring to the one you just read, may subsequently adhere. It doesn't say – I know. May subsequently adhere.  All right. Thank you very much, counsel.  Thanks very much.  Thank you. Marsha Mase. Thank you. Marsha. Hi, Mr. Court. Rod Margo on behalf of Apele Singapore Airlines and EVA Airways Limited of Taiwan. I'm not sure that there's much that I need to address, except I would make a few comments about DAZO. The name of the case is DAZO versus Globe Security, which is a case – Thank you. – for a security company. And I think it's very clear from the facts of DAZO that it's not contradictory of the Peggy's Cove decision at all. What was going on with DAZO is that there was a company providing security services at an airport, and any time anybody had to go through the security services, whether they were passengers or non-passengers or employees or airport personnel, they were required to go through the security check that was being administered by DAZO. And that was being done under federal law that required passengers to be checked for security before they boarded aircraft. So to the extent that the airline in DAZO – the airlines in DAZO had contracts with the security company, that was not necessarily involved in the furtherance of the contract of transportation. What the Second Circuit said in the Peggy's Cove case was simply that if a carrier's agent is acting in the furtherance of the contract of transportation, then they will be – fall within the status of an agent for purposes of the convention. And we've set out in our papers the services that – had been a separate company that only worked in connection with flights of that carrier, and the carrier only was engaged in international transportation. If all that DAZO was doing in that hypothetical was checking passengers for the carrier, only passengers for the carrier, then arguably it would have fallen within. Arguably? What does that mean? Well, you can make an argument about this case, too, if you want to. There's somebody here doing it. So it's arguably there, too. Well, the question is whether checking a passenger for security is conduct in furtherance of the contract of transportation. Right. That was the question. One or the other. I would submit that it is. It is. Okay. Does it make any difference at all that all these cases deal with liability and not with venue? And how would you – how do you apply Article 28? How do you apply Article – let's assume that EVA is covered. How is it covered? Can you sue – where do you sue EVA, then? The four places that provided funding. Which four places? Where it's doing business or Singapore Airlines is doing business? The only place that does business would be Taiwan. So you can sue that agent in Taiwan. If you had different agents, you could sue them elsewhere. And the net result is that we now have lots of lawsuits going on in lots of different places against different agents, even though there's only one carrier. Well, the argument is that the – is that – that's a good point. And the other thing that somewhat bothers me, consistent with that, is that as I understand it, the Hague Protocol actually added a provision about agents with regard to liability. Right. But it didn't add one with regard to this venue provision. It's Article 28. In other words, the Article 28 doesn't talk about agents, but the liability provision does. Limitation. But I think that to the extent that the agents are covered by the liability provision, then automatically Article 28 would apply to the agent because we're dealing with a situation where the agent is being sued for a liability that arises under Article 17 of the Convention. Right. But where are they being sued? I mean, one possibility is that they are being – they can only be sued wherever the carrier could be sued and nowhere else. That makes sense. That makes sense. Based on what you're saying, in other words, the EVA could only be sued in Singapore or where the – Another possibility is that the limitations – the limitations on venue don't apply to them, so they can be sued wherever they can be found, even though their liability is limited. I would respectfully disagree with that view, Your Honor. It just seems to be a sort of unanswered question in all the briefs, and it's because none of the cases deal with it. They're all dealing with liability questions. With respect to the comment made by Mr. Wysen about the waiver of limitations and the carrier agreement, that was specifically done on the basis that the carriers retained all their other defences, so with respect to Article 28, that remains intact. And again, he said that the plaintiffs were not able to sue in their domicile, but that's not correct because the plaintiffs in this case were not domiciled in the United States. They were domiciled in Indonesia and Malaysia, and in one case in India. And I'm not sure that I need to address the status of the parties under the Warsaw Convention because I think it's very clear that they were signatories. I'll be happy to answer any questions. Thank you. Thank you. All right. The case just argued will be submitted. The final case of the morning is Van Schindel v. Boeing. That's how things roll. It's a long story. It was a whole period of it. It was a whole period of it. But the Americans refused. They didn't raise the money. They were trying to offset the liability. And they finally didn't agree with the carriers. That's true. That's true.
judges: Reinhardt, Kozinski, Berzon